UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

GOSSAMER WING, LLC, AS TRUSTEE,

          Plaintiff,

v.

THE BANK OF NEW YORK MELLON fka
THE BANK OF NEW YORK, as Trustee for
the Certificateholders of CWABS, Inc., Asset-
Backed Certificates, Series 2007-2,

          Defendant.

_____/

CASE NO. 9:21-cv-80319-AMC

(formerly Palm Beach County
Case No. 2020-CA-011308)

**DEFENDANT'S MOTION TO QUASH SERVICE OF PROCESS AND
VACATE THE CLERK'S DEFAULT AND DEFAULT FINAL JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, The Bank of New York Mellon as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2007-2 ("**Defendant**" or "**Trust**"), hereby moves, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), to quash service of process improperly made upon Defendant; and moves, pursuant to Fed. R. Civ. P. 55(c) and 60(b), to set aside the clerk's default entered on November 19, 2020 and the default judgment entered on January 6, 2021 in the State Court Action; and says:

**I.    Background and Facts**

This case involves one of over eighty identical lawsuits filed in late 2020—primarily by Plaintiff's counsel, Lee Segal—involving an egregious and intentional attempt to deprive the defendants of their fundamental due process rights by failing to serve defendants with process. Plaintiff's counsel has designed this scheme, discussed below, to prevent the defendants from receiving any notice of these cases. Remarkably, the sole purpose of these lawsuits is to accumulate default judgments for many tens, if not hundreds, of millions of dollars.

1

### A.     Plaintiff's counsel's improper scheme to amass default judgments

The named plaintiff in many of these cases is a shell company created by foreclosure defense attorneys to invest in foreclosure-distressed properties. In particular, the principal of the named Plaintiff in this case, and many if not most of these cases, is disbarred foreclosure defense attorney Mark Stopa. *See* Doc. 1 at ¶ 11 & Exs. B-C. These cases were filed primarily by Mr. Stopa's friend and attorney, Lee Segal, along with three other lawyers working in concert.

The court filings and pattern in all of these cases are identical. These lawsuits were all filed in late 2020 against Deutsche Bank National Trust Company ("**DBNTC**") and The Bank of New York Mellon ("**BONYM**"). The complaints are based on a frivolous "wrongful foreclosure" theory, following entry of a foreclosure judgment in state court in favor of the defendant—*i.e.*, the foreclosing plaintiff. These cases were purposefully filed in random counties throughout Florida—*not* in the proper county where the foreclosure judgments were obtained—to increase the likelihood of obtaining default judgments.[1] The stated cause of action is under Florida's RICO statute because it allows for treble damages. The factual allegations are nonsensical, but the merits of the claims are irrelevant because Plaintiff's counsel has no intent on litigating the cases on their merits. Indeed, a large percentage of these cases, including this one, involve signed settlement agreements between the parties, thereby releasing plaintiff's "claims."

Most importantly, in each of these cases, Plaintiff's counsel serves the summons and complaint on CT Corporation System ("**CT Corp**"), which is not the defendant's registered agent.

---

[1] Plaintiff's counsel uses many tactics to make detection difficult. For example, he files the cases in counties without electronically-accessible court dockets, or, as in this case, he misclassifies the cases as "Trust Litigation" to make the filings confidential and unviewable (until defendants can persuade the clerk to make the filings accessible). Similarly, after defendants started searching for and locating cases filed by Mr. Segal, suddenly the cases started to be filed in the name of other attorneys and then Mr. Segal would immediately appear and take over the case. *See, e.g.*, M.D. Fla. Case No. 5:21-cv-65.

Upon receiving the summons and complaint, CT Corp immediately rejects service and provides Plaintiff's counsel with a letter stating that CT Corp is not the defendant's registered agent, and as a result, CT Corp was unable to forward the summons and complaint to the defendant. The rejection letter sent in this case, which is substantively identical to the one sent in every one of these cases, is an exhibit to CT Corp's affidavit, which is attached as **Exhibit 1**. An affidavit of BNYM, attesting that BNYM never received service of the summons and complaint and first discovered this lawsuit on January 13, 2021, through its own independent research, is attached as **Exhibit 2**. And attached as **Exhibit 3** is a chart listing over *eighty identical lawsuits* that undersigned counsel is aware of as of the date of this filing.

Despite receiving these letters, and being on express notice that defendant has not received *any* notice of the lawsuit whatsoever, Plaintiff's counsel quickly moves for both a default and a default final judgment for an exorbitant amount. Plaintiff's counsel tries to accomplish this based on a generic "affidavit" stating that someone has reviewed Realtor.com and Zillow.com and arrived at an estimated property value, and then Plaintiff's counsel requests treble "damages" based on the property value.

Sometimes the courts recognize on their own that the plaintiff is not entitled to any judgment, either because the complaint clearly fails to state a claim, because the summary judgment "affidavit" is inadmissible and insufficient to establish damages, or because the defendant has not been properly served. Some recent examples of state court orders entered in these cases are attached hereto as **Composite Exhibit 4**. And sometimes the defendant will be able to discover the lawsuit before a clerk's default is even entered—through its independent searches

of the court dockets throughout Florida—and will then appear before a default can be entered. In response, Plaintiff's counsel will generally dismiss the case voluntarily.[2]

Even more shocking, after these cases are dismissed—either voluntarily or by the courts—and sometimes even before dismissal, Plaintiff's counsel will often re-file the exact same complaint in a different improper county, without any notice to the defendant or its known counsel of record, repeating the same pattern described above. In one recent case, the U.S. District Court for the Northern District of Florida ordered Plaintiff's counsel to show cause why "sanctions, including costs and attorney's fees, should not be awarded against him, on these grounds: filing a duplicative action, filing the action in a clearly improper venue, failure to properly serve process, obtaining a default judgment with no colorable basis for asserting proper service of process . . . ." Case No. 1:21cv15-RH-GRJ (N.D. Fla. Feb. 19, 2021) Doc. No. 9, at 2-3. An example of such a case handled by undersigned counsel is M.D. Fla. Case No. 3:21-cv-00102-BJD-MCR, which Plaintiff's counsel initially filed in Lee County, Florida (Case No. 2020-CA-5536), but when defendant's counsel discovered and appeared in the case, Plaintiff's counsel voluntarily dismissed and re-filed the exact same case in St. Johns County, Florida (2020-CA-001102) and refused to provide any notice of the new case to defendant's counsel of record, resulting in a clerk's default before defendant could discover and ultimately remove the new case to federal court. These are the typical tactics of Plaintiff's counsel, who uses the Florida court system as his own personal game board to improperly accumulate default judgments, requiring defendants to engage in an endless game of "Whack-a-mole."

---

[2] Plaintiff emphasizes in its filings that Defendant does not contest service when it discovers the case before a default is entered, despite defective service. But in those situations there is no reason to contest service or move to quash, and doing so would be highly unusual. Regardless, in all of these cases, it is undisputed that CT Corp rejected service and that Defendant received no notice of the case except through its own independent research. *See* Ex. 2, ¶¶ 10-11.

Unfortunately, in most of these cases, like this one, the defendant does not discover the case until after a clerk's default, and often a default judgment is entered, which of course is the precise goal of Plaintiff's counsel in each of these cases. In this situation, Plaintiff's counsel aggressively defends the propriety of the default and defective service until the default is eventually vacated.

As noted above, many of these cases have been removed to federal court. Once removed, Plaintiff's counsel generally ceases the harassing tactics that he employs in state court, including invasive discovery requests, frivolous motions for sanctions and for disqualification, and seeking lengthy evidentiary hearings on "red herring" issues. Instead, as in this case, Plaintiff's counsel usually files a motion for remand, alleging that removal is untimely. Specifically, in cases against DBNTC, Plaintiff's counsel claims that service on CT Corp was proper because a security guard working at the corporate headquarters of Deutsche Bank—who, unlike DBNTC, has appointed CT Corp as its registered agent—informed the process server that service could be effected through its registered agent, CT Corp. Similarly, in cases against BNYM, Plaintiff's counsel claims that service on CT Corp was proper because BNYM maintains the same Employer Identification Number (EIN) as one of its predecessors, The Bank of New York, Inc. ("**BONY**")—who, unlike BNYM, has appointed CT Corp as its registered agent. *See* Doc. 3, ¶¶ 5, 22; Doc. 4 (Sunbiz filings for BONY). Not surprisingly, these theories for service ignore critical facts, including that there is *zero* evidence, and *nothing* in the public records, reflecting that either DBNTC or BNYM has *ever* appointed CT Corp as its registered agent.

Notably, every state and federal court to have decided the service issues in these identical cases has concluded that service of process was fatally defective. *See, e.g.*, Ex. 4 (sampling of state court orders); *see also* Case No. 8:20-cv-3090-VMC-AEP (M.D. Fla. Feb. 22, 2021), Doc. No. 32

(detailed order denying motion to remand); Case No. 8:21-cv-00039-WFJ-TGW (M.D. Fla. Ja. 22, 2021, Doc. No. 13 (granting motion to quash), Doc. No. 15 (denying motion to remand); Case No. 5:21cv14-TKW-MJF (N.D. Fla. Feb 18, 2021), ECF No. 16 (detailed order quashing service and denying remand), ECF No. 21 (denying reconsideration).[3]

Ultimately, the facts in these cases are disturbing. Plaintiff and its counsel have concocted a scheme to try to obtain default judgments against banking institutions for many tens of millions of dollars. Over the span of a few months, they filed nearly one hundred lawsuits (or perhaps more) across the entire State of Florida in an effort to avoid detection, based on complaints containing non-existent claims. For the scheme to potentially work, Plaintiff's counsel has attempted to document *some* basis upon which to serve CT Corp rather than the defendant, knowing that CT Corp would reject service. As intended, the defendants in these cases—who are routinely served and have no difficulty receiving service in other lawsuits—never received any notice of these lawsuits. Of course, Plaintiff's counsel should not be rewarded for his reverse-engineered scheme to accumulate massive default judgments on non-existent claims. At a minimum, the defaults and default judgments in these cases must be vacated.

**B.   The facts in this particular case**

This particular action is based on a prior mortgage foreclosure action brought by the Trust in Pasco County, Case No. 2008-CA-004054 (the "**Foreclosure Action**"), relating to real property located in Pasco County at 4340 Huddlestone Drive, Wesley Chapel, Florida 33545 (the "**Property**"). Compl. ¶¶ 3, 20. The Foreclosure Action, which was heavily defended, resulted in a

---

[3] As of the date of this filing, it does not appear that the federal courts have issued decisions yet in any of the cases against BNYM. Defendant's counsel will file notices of supplemental authority as these same motions get decided in the numerous identical cases involving BNYM.

Final Judgment of Foreclosure on September 10, 2014 at the conclusion of trial (the "**Foreclosure Judgment**"). The Foreclosure Judgment is attached as **Exhibit 5**.

The Plaintiff herein purchased the Property on August 28, 2013 while the Foreclosure Action was pending at a junior lien foreclosure sale for $27,400.00, in Pasco County Case No. 2013-CC-000118. The sale price was only $27,400.00 due to the Trust's senior mortgage on the Property and the pending Foreclosure Action. A copy of the Certificate of Sale and the Certificate of Title to the Plaintiff is attached as **Composite Exhibit 6**. Thus, Plaintiff took title to the Property in 2013 subject to the Trust's senior mortgage and lis pendens in the Foreclosure Action.

On January 28, 2019, *Plaintiff and Defendant entered into a Settlement Agreement and Release of Claims*, which broadly released all claims relating to the Foreclosure Action, the Property, or the mortgage, including the precise claims that form the basis for this new lawsuit (the "**Settlement Agreement**"). A copy of the Settlement Agreement is attached as **Exhibit 7**. *See* Ex. 7 at ¶¶ 3E-F (broad release provisions). The Settlement Agreement is between Plaintiff and Defendant, and it specifically identifies counsel for each party, including Lee Segal who signed as the attorney for Plaintiff, along with disbarred attorney Mark Stopa who signed as the principal for Plaintiff, so there could be no denying that either Plaintiff or its counsel are aware of the Settlement Agreement. Ex. 7. Pursuant to the Settlement Agreement (¶ 3C), on March 14, 2019, the court entered an ***Agreed*** Order Vacating Final Judgment of Foreclosure, Dismissing Action, and Discharging Lis Pendens. A copy of the Agreed Order is attached as **Exhibit 8**. In addition, pursuant to the Settlement Agreement (¶ 3D), the Defendant recorded a Satisfaction of Mortgage, which was recorded on March 11, 2019, a copy of which is attached as **Exhibit 9**. As a result, the Foreclosure Judgment was vacated, the foreclosure sale never occurred, and title never transferred as a result of the Foreclosure Action, and in fact, the mortgage itself has been satisfied and released.

QB\67142563.1

Thus, to be clear, not only has this particular Plaintiff released the exact claims that form the basis for this meritless suit, but in fact, the entire suit challenges an event—an allegedly improper foreclosure sale that allegedly deprived Plaintiff of title—*that never even occurred*. In fact, Plaintiff—who continued to own the Property, free and clear of the mortgage—later sold the Property to a third party in July 2019 for $260,000 (*i.e.*, fair market value), which further demonstrates the utter frivolousness of Plaintiff's "claim" in this case. A copy of the General Warranty Deed and the online records for the Property from the Pasco County Property Appraiser's Office (which each reflect the purchase price, including through the amount of doc stamps paid) is attached as **Composite Exhibit 10**.

Plaintiff filed the Complaint in this separate action on October 18, 2020 in *Palm Beach* County, Florida (the "**State Court Action**"), even though all of the underlying events—*i.e.*, the challenged Foreclosure Action—took place in Pasco County. There is zero connection to Palm Beach County. The Complaint seeks damages for violation of Florida's "Civil Remedies for Criminal Practices Act," Fla. Stat. § 772.101, *et seq.*, referred to as Florida's RICO statute, based on litigating the Foreclosure Action. The claim is based on the allegation that the Trust was not the owner or holder of the note and therefore lacked standing to foreclose. Compl. ¶¶ 8, 10, 23-25.

Plaintiff immediately obtained a Summons to serve Defendant—The Bank of New York Mellon, as trustee—at CT Corp. The Return of Service filed on October 26, 2020 states that service was delivered to Donna Mack, Manager for CT Corp. Upon receiving the attempted service, CT Corp immediately sent a letter on October 22, 2020 to Plaintiff's counsel making clear that CT Corp "*is not the registered agent*" for BNYM, and that CT Corp "*was unable to forward*" service to BNYM. Ex. 1, at ¶ 5 & Ex. 1; *see id.* ("CT was not then and is not currently the registered agent for [BNYM]"); Ex. 2, ¶¶ 10-11.

Despite receiving this letter, Plaintiff moved for a default on November 13, 2020, which was entered by the Clerk on November 19, 2020 ("**Clerk's Default**"). Prior to obtaining the Default, Defendant had never received service or any notice of this case. Ex. 2, ¶¶ 10-11. On November 13, 2020—six days *before* the Clerk's Default was even entered—Plaintiff filed a Motion for Final Summary Judgment After Default. The Motion incorrectly states, "Defendant was personally served with process, yet it did not respond to the Complaint, resulting in a clerk's default," even though Plaintiff's counsel knew that Defendant had never received any notice of this case, and even though the Clerk's Default had not even been entered. The "Affidavit" in support does not mention any claims or damages, but merely states that the Property is worth $333,083.00, based on a review of Realtor.com and Zillow.com. Likewise, the Motion contains no discussion of Plaintiff's allegations or basis for recovering damages. Remarkably, the Motion requests $999,249.00, based on treble "damages" in the amount of the property value "multiplied by three," even though Final Judgment in the Foreclosure Action was vacated, even though Plaintiff purchased the rental Property for only $27,400, even though the parties settled these claims, even though Plaintiff later sold the Property for $260,000, and even though there are no identifiable damages alleged in the Complaint. On January 6, 2021, the State Court entered a Final Judgment After Default in the amount of *$999,249.00* (the "**Default Judgment**").

Defendant first discovered the existence of this lawsuit on January 13, 2021—after the Default Judgment had already been entered—through its own independent research. Ex. 2, ¶ 11. On January 21, 2021, Defendant filed a detailed motion to quash service and vacate the Clerk's Default and Default Judgment in the State Court Action. On February 11, 2021, Defendant removed the case to this Court. Defendant is renewing its motion in compliance with L.R. 7.2.

## II.    **The Law and Argument**

### A.    **The Default Judgment must be vacated pursuant to Fed. R. Civ. P. 60(b)(4) because it is void for lack of personal jurisdiction and insufficient service of process.**

The Default Judgment must be set aside as void because Defendant was never properly served, and therefore the state court lacked jurisdiction over Defendant when the Judgment was entered. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Center*, 896 F.2d 1313, 1317 (11th Cir. 1990). Absent service of process, all proceedings against the defendant are void. *See Kelly v. Fla.*, 233 F.R.D. 632, 634 (S.D. Fla. 2005), *aff'd*, 233 F. App'x 883 (11th Cir. 2007). "It is plaintiff's burden to establish proper service of process when challenged." *Id.* "The statutory method of service is exclusive and must be strictly followed." *Id.*

Defendant is a financial institution, and therefore service "must be made in accordance with s. 655.0201." Fla. Stat. § 48.092; *see* Fla. Stat. § 655.0201(1). The statute clearly provides that "service may be made to *any officer, director, or business agent of the financial institution at its principal place of business or at any other branch, office, or place of business in the state*." Fla. Stat. § 655.0201(3)(a) (emphasis added). Subsection (2), which does not apply here, as discussed below, provides financial institutions with an optional right to designate a registered agent within the state for service of process. Fla. Stat. § 655.0201(2).

BNYM's principal place of business is located at 240 Greenwich St., New York, NY 10286. Ex. 2, ¶ 8. Critically, it is undisputed that Plaintiff made no attempt to serve BNYM at this location, where BNYM routinely accepts service of process, or at any of BNYM's many branches in Florida, which would have been easy to do. *Id.* at ¶¶ 8, 10-11. A simple Internet search for "The Bank of New York Mellon" reveals that BNYM has many offices in Florida. *See*

10

https://www.bnymellon.com/us/en/about-us/locations.html. Nor did Plaintiff serve any officer, director, or business agent of BNYM, as the statute requires.

Instead, Plaintiff relies solely on the improper attempted service on CT Corp. *See* Doc. 3 (Motion for Remand). Plaintiff's counsel pursued this theory *even though there is **nothing** in the public records suggesting that BNYM has ever appointed CT Corp as its registered agent.* Plaintiff's counsel also pursued this theory despite knowing that CT Corp would expressly reject service and not provide the summons and complaint to BNYM, and that Defendant would not receive *any* notice of this case. Exs. 1-2.

Plaintiff's entire basis for pursuing this bizarre theory—and its sole "evidence" in support of its position—is that BNYM shares the same EIN as one of its predecessors, BONY, who, unlike BNYM, did appoint CT Corp as its registered agent. *But Plaintiff did not sue BONY, so there was no reason to investigate how BONY would need to be served.*[4] A simple search for the Defendant, *BNYM*, on Florida's Division of Corporations website ("**Sunbiz**"), reveals that BNYM has *not* appointed CT Corp as its registered agent. *See* **Exhibit 11**. And if there were any doubt, a review of the Federal Deposit Insurance Corporation ("**FDIC**") website would have revealed that BONY is "Closed," unlike BNYM, which is the successor entity. Attached as **Exhibits 12 and 13** are FDIC records for BONY and BNYM, respectively. And the mere fact that BNYM maintained BONY's EIN—Plaintiff's lynchpin argument—is hardly surprising given the well-known merger with BONY that resulted in BNYM. *See, e.g.*, https://www.irs.gov/businesses/small-businesses-self-employed/do-you-need-a-new-ein (stating that a new EIN is not required if "[t]he surviving

---

[4] If Plaintiff had sued BONY—presumably based on pre-merger liabilities—then it is quite possible that BNYM, as the successor entity, would have received notice. And of course, there are good reasons for successor entities to want to receive notice of lawsuits against their predecessors.

corporation uses the existing EIN after a corporate merger").[5] Thus, not only was extensive research required by Plaintiff's counsel to invent *some* basis to serve BNYM through CT Corp, but any genuine inquiry would have revealed that BNYM—the actual defendant in this case—was the proper entity to serve. And of course, Plaintiff's counsel already knew that CT Corp had not accepted any appointment as a registered agent for *BNYM*, as Florida law requires. Fla. Stat. § 607.0501(3); Ex. 1.

Once this insufficient attempt to serve BNYM was documented, Plaintiff immediately moved for and obtained the Default and Default Judgment, falsely representing that BNYM had been "personally served." Plaintiff did that without even attempting service at any BNYM location, or making any additional efforts to notify BNYM of this case, despite knowing that BNYM had no notice of this lawsuit. Ex. 1; Ex. 2, ¶¶ 10-11. For example, prior to seeking a default, Plaintiff failed to provide notice to Defendant's counsel of record in the Foreclosure Action that forms the basis for this lawsuit—with whom Plaintiff had recently negotiated the Settlement Agreement— which provides an independent basis for vacating the Default. *See Jacaranda, LLC v. Green Tree Servicing, LLC*, 203 So. 3d 964, 966 (Fla. 2d DCA 2016) ("[A] trial court should vacate an ex parte default when the plaintiff seeking default had actual knowledge that the defendant was represented by counsel ["in another lawsuit which involves the same dispute"] and intended to defend the lawsuit, but failed to contact the defendant's counsel prior to seeking default."); *Makes & Models Magazine, Inc. v. Web Offset Printing Co., Inc.*, 13 So.3d 178, 181 (Fla. 2d DCA 2009); *U.S. Bank Nat. Ass'n v. Lloyd*, 981 So.2d 633, 642-3 (Fla. 2d DCA 2008).

---

[5] Although not articulated or intelligible, Plaintiff appears to be arguing that every time a merger occurs and a successor entity maintains the same EIN as one of its predecessors, which is common, then the successor entity must also maintain the same registered agent as that predecessor. Needless to say, there is no legal support for such an argument, and no basis for courts to impose such a requirement.

Plaintiff's argument is nothing more than an attempt to convince this Court that service was proper on a non-party who had been notifying Plaintiff's counsel for months that it would not and could not accept service, and where the actual Defendant in this case never appointed CT Corp as its registered agent. Because Defendant was not properly served, the state court lacked jurisdiction over Defendant. Therefore, the Clerk's Default and Default Judgment must be vacated.

**B. Alternatively, the Clerk's Default and Default Judgment should be vacated for good cause and excusable neglect.**

"To establish . . . excusable neglect under Rule 60(b)(1), a defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). Likewise, the liberal "good cause" standard for setting aside defaults under Rule 55(c) considers (1) whether the default was culpable or willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense. *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

"[B]ecause of the strong policy of determining cases on their merits, defaults are seen with disfavor." *See Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1510 (11th Cir. 1984). Indeed, "[t]o obtain relief under Rule 55(c), the movant must only make a 'bare minimum showing' to support her claim for relief." *Griffin IT Media, Inc. v. Intelligentz Corp.*, 2008 WL 162754, 2 (S.D. Fla. 2008) (citing *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988)).

**1.      Setting aside the Defaults would not prejudice Plaintiff.**

Vacating the Default would not prejudice Plaintiff. The concept of prejudice is "whether prejudice results from the delay, *not from having to continue to litigate the case*." *Conn. State*

*Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009) (emphasis added). Here, Defendant's Motion is filed at the outset of the case, before any litigation has occurred. *See Foster v. Omni Cab, LLC*, No. 3:15-CV-1421-J-34MCR, 2016 WL 8997403, at *2 (M.D. Fla. May 3, 2016) (finding no prejudice when four months lapsed between filing complaint and defendant's motion to set aside default). Also, any short delay is attributable to *Plaintiff*, due to his refusal to notify Defendant of this case or to agree to vacate the Default.

Admittedly, vacating the Default would defeat the entire purpose of this case and likely result in a voluntary dismissal. But that does not constitute "prejudice" for purposes of this inquiry, because the only result of vacating the Default would be that Plaintiff would have to actually "litigate the case" on its merits. *Conn. State Dental Ass'n*, 591 F.3d at 1357. As discussed above, there is a strong preference to allowing cases to be tried on their merits, and certainly no preference for allowing attorneys to engage in trickery and schemes to obtain default judgments.

### 2.   Defendant has good reason for failing to reply to the Complaint.

The only reason Defendant did not timely reply to the Complaint is because Defendant never received it, and never received any notice of this case, and therefore did not have *any* opportunity to respond to the Complaint. BNYM first learned of this lawsuit on January 13, 2021, which was *after* the Default Judgment was already entered. Ex. 2, ¶ 11; *see also Ferrier v. Atria*, 728 F. App'x 958, 961 (11th Cir. 2018) (holding that default was not willful or culpable because defendant was not properly served and was "unaware of the action against him").

### 3.   Defendant has numerous meritorious defenses.

Defendant has numerous meritorious defenses, including that the Complaint is barred as a matter of law and fails to state a claim. In evaluating the existence of a meritorious defense, "likelihood of success is not the standard; rather, a defense is meritorious if it contains 'even a

14

hint of suggestion which, if proven at trial, would constitute a complete defense.'" *James v. Progress Energy Florida, Inc.*, No. 5:11–cv–175–Oc–32TBS, 2011 WL 3585816, *2 (M.D. Fla. Aug. 16, 2011). Examples of meritorious defenses include denial of engaging in the alleged misconduct and lack of personal jurisdiction. *Acme Barricades, L.C. v. Acme Barricades, LLC*, No. 3:20-CV-255-J-34PDB, 2020 WL 7390081, at *3 (M.D. Fla. Oct. 24, 2020); *Clark v. Newcity*, No. 2:10-CV-360-WKW, 2010 WL 3908596, at *3 (M.D. Ala. Sept. 30, 2010).

### a.      This Court lacks personal jurisdiction over Defendant.

Although Defendant has no intention of ultimately defending this case on the basis of personal jurisdiction—and Defendant would have promptly appeared in the case if only Defendant had received notice of it—currently this Court lacks jurisdiction over Defendant because Defendant has never been served with process.

### b.      Plaintiff's claim is barred by settlement and release.

As a true reflection of the utter frivolousness of these lawsuits, Plaintiff's claim in this case, and *many* of these cases, is barred by the written, signed Settlement Agreement between the parties. All of the challenged conduct occurred prior to, and was expressly released by, the Settlement Agreement. The parties' signed Settlement Agreement and the Satisfaction of Mortgage release all claims related to the Foreclosure Action, including those in the Complaint. But of course, the merits of these "claims" are entirely irrelevant to Plaintiff's counsel's scheme.

### c.      The Complaint is barred by the litigation immunity privilege.

Florida's litigation immunity privilege provides absolute immunity for acts occurring during the course of a judicial proceeding "so long as the act has some relation to the proceeding," and the privilege "extends to the parties, judges, witnesses, and counsel involved and related to the judicial proceedings." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380,

383–84 (Fla. 2007) (holding that litigation privilege bars all causes of action, whether tort or statutory, and that borrowers were barred from suing based on conduct occurring during foreclosure proceedings). As the Florida Supreme Court has explained, parties must "be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct," and the "remedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608-09 (Fla. 1994). Here, the Complaint is based on the allegation that Defendant "illegally" litigated the Foreclosure Action. Of course, courts and litigants are protected against these types of claims brought in separate proceedings by the litigation privilege.

### d.      Plaintiff's claim is time-barred.

Plaintiff's claim is also time-barred. The statute of limitations period is five years. Fla. Stat. § 772.17. All of the challenged conduct occurred more than five years before the Complaint was filed, including recording the assignment of mortgage and lis pendens in 2008 and obtaining the Foreclosure Judgment in 2014. Compl. ¶¶ 21, 40. Therefore, the claim is time-barred.

### e.      Plaintiff took title subject to the mortgage and lis pendens.

Plaintiff purchased the Property subject to the mortgage and lis pendens—five years after the lis pendens was recorded—which of course explains why Plaintiff was able to purchase the Property for such a discount and why Plaintiff entered into the Settlement Agreement. A recorded lis pendens serves as constructive notice to everyone acquiring an interest in Property of the claims asserted in the litigation, and by operation of law, any purchasers acquire their interest subject to the outcome of the litigation. *See, e.g.*, *U.S. Bank Nat. Ass'n. v. Bevans*, 138 So. 3d 1185 (Fla. 3rd DCA 2014); *Adhin v. First Horizon Home Loans*, 44 So. 3d 1245, 1251-52 (Fla. 5th DCA 2010).

In addition, Plaintiff purchased the Property subject to the mortgage, and therefore is estopped from challenging the validity or enforceability of the mortgage, which is precisely what this lawsuit seeks to do. *See Irwin v. Grogan-Cole*, 590 So. 2d 1102, 1104 (Fla. 5th DCA 1991); *Eurovest, Ltd. v. Segall*, 528 So. 2d 482, 483 (Fla. 3d DCA 1988). Similarly, Plaintiff lacks standing to raise its claims, given that it is a stranger to the mortgage and underlying issues that form the basis for its claims. *See, e.g.*, *Citibank, N.A. v. Olsak*, 208 So. 3d 227, 230 (Fla. 3d DCA 2016).

Furthermore, the Complaint is based on an event that never occurred—an allegedly improper Foreclosure Judgment—when in fact the Judgment was vacated pursuant to a signed Settlement Agreement. If Plaintiff's allegations were somehow true—*i.e.*, assuming Defendant had improperly foreclosed—then the Complaint would be barred by res judicata and collateral estoppel because the claims turn on Defendant's standing and entitlement to foreclose. Those issues were already adjudicated in the Foreclosure Action, which resulted in a Judgment (before it was vacated), and the validity of that Judgment would be beyond this Court's jurisdiction.

Thus, under any analysis, Plaintiff's claim are barred as a matter of law.

**f.      Plaintiff has failed to allege any causation or damages.**

Plaintiff has failed to allege damages because the Foreclosure Judgment was vacated and never resulted in Plaintiff losing title to the Property. Similarly, there is no causation between the alleged wrongdoing (litigating the Foreclosure Action) and Plaintiff's alleged damages (the value of the Property) because Plaintiff never lost title as a result of the Foreclosure Action.

**g.      The Complaint fails to state a claim, which is an independent ground for vacating the Defaults.**

The Complaint fails to state a claim, which also is a separate and independent basis to vacate the Default Judgment. Under Florida law, "[a] default judgment should be set aside where the complaint on its face fails to state a cause of action." *Becerra v. Equity Imports, Inc.*, 551 So.

17

2d 486, 488 (Fla. 3d DCA 1989) ("where the complaint fails to state a cause of action, courts find it unnecessary to decide whether the defendant otherwise set forth good grounds for failing to respond to the complaint."); *see Santiago v. Mauna Loa Investments, LLC*, 189 So. 3d 752, 755 (Fla. 2016). Put differently, a plaintiff is not entitled to a judgment against a defendant merely because the defendant has not responded where the well-pled allegations of the complaint do not even state any cause of action, just as numerous courts have held in denying motions for summary judgment and dismissing these exact same complaints, despite clerk's defaults. *See, e.g.*, Ex. 4.

Ultimately, if this Complaint alleged a RICO claim, then the mere filing of nearly every foreclosure case would likewise give rise to a valid RICO claim, since none of the allegations are even connected to the actual loan or Foreclosure Action at issue. Indeed, Plaintiff's counsel has filed many dozens of recent "RICO" complaints *based on the exact same allegations*. *See* Ex. 3.

"Florida's RICO statutes have consistently been interpreted using federal RICO claim cases." *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir. 1998). "Civil RICO claims, which are essentially a breed of fraud claims, must be pled with an increased level of specificity" consistent with Rule 9(b). *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Plaintiff must plausibly allege Defendant "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014). Because Plaintiff raises a conspiracy claim, he must also allege: "(1) an agreement with the overall objection of the conspiracy; or (2) an agreement to commit two predicate acts." *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1217 (S.D. Fla. 2020).

Plaintiff fails to allege any of the required elements of a RICO claim. Rather than alleging that Defendant operated or managed an enterprise, Plaintiff seems to suggest that *Defendant* is

acting as the enterprise. No other entity or person is named as a defendant, and only Defendant and its own servicing agents are alleged to have committed any wrongdoing. Compl ¶ 36. But Defendant's servicing agents cannot comprise part of the enterprise. *See Ray*, 836 F.3d at 1357 (11th Cir. 2016); *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 163 (2001); *see also Wilmington Sav. Fund Soc'y, FSB v. Tacoronte*, 293 So. 3d 1071, 1073 (Fla. 5th DCA 2020).

Plaintiff also fails to allege Defendant is "engaging in an ongoing course of criminal conduct." *Courbin v. Scott*, 596 Fed. Appx. 729, 733 (11th Cir. 2014). Plaintiff claims Defendant brought the Foreclosure Action to "attempt to foreclose the Mortgage and steal the Property from Plaintiff." Compl. ¶ 23. But foreclosing a mortgage is "a discrete goal" and cannot constitute an ongoing criminal enterprise. *See Dysart v. BankTrust*, 516 Fed. Appx. 861, 864 (11th Cir. 2013).

And Plaintiff fails to allege criminal acts and a pattern of criminal activity. *See* Fla. Stat. § 772.102(4). Plaintiff bases his claim on (1) recording the assignment of mortgage (Compl. ¶¶ 21-23, 40), and (2) prosecuting the Foreclosure Action (Compl. ¶¶ 23, 40). But Plaintiff fails to allege how such activity gives rise to liability under RICO, instead alleging, in conclusory terms, that Defendant engaged in a "fraudulent and illegal attempt to foreclose the Mortgage and steal the Property from Plaintiff." Compl. ¶ 23. Without plausible allegations of multiple criminal acts, Plaintiff cannot establish the required pattern of criminal activity.

Plaintiff also fails to allege a conspiracy. Plaintiff's conclusory allegation that Defendant conspired with its own servicing agents is clearly insufficient to support a RICO conspiracy claim. *See Twombly*, 127 S. Ct. 1955, 1966 (2007). Also, without actionable predicates, the conspiracy allegations fail. *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004).

**C.     Separately, the Default Judgment Should be Vacated Pursuant to Fed. R. Civ. P. 60(b)(3) for fraud, misrepresentation, and misconduct.**

Rule 60(b)(3) provides relief from final judgment for "fraud, … misrepresentation, or misconduct by an opposing party." For relief under Rule 60(b), the misconduct must be of a type that prevented the other party from "fully and fairly presenting his case." *Keys v. Dunbar*, 405 F.2d 955, 958 (9th Cir. 1969). These lawsuits epitomize the purpose and scope of this rule. As discussed above, the only reason defendants did not appear and respond to these countless lawsuits—and indeed, the only reason they were filed in the first place—is the result of Plaintiff's counsel's improper scheme to amass default judgments. This type of conduct should not be condoned, and at a minimum, it warrants vacating the Clerk's Default and Default Judgment.

### III.     <u>Conclusion</u>

The Clerk's Default and Default Judgment entered against Defendant must be vacated, for multiple independent reasons. First, Plaintiff has not and cannot meet its burden of proving that it strictly complied with Florida's statute for service of process on financial institutions. As such, service was improper and must be quashed, and the Defaults are void and must be vacated. Alternatively, even if service were somehow sufficient, Defendant has demonstrated excusable neglect and good cause. In addition, Plaintiff obtained the Defaults through fraud, misconduct, and misrepresentation. Therefore, this Court should quash service and vacate the Defaults.

WHEREFORE, Defendant respectfully requests that this Honorable Court quash the service of process improperly made upon Defendant, set aside the Clerk's Default entered on November 19, 2020, vacate the Default Judgment entered on January 6, 2021 in the State Court Action, deny Plaintiff's Motion to Strike Motion to Vacate and for Sanctions filed in the State Court Action, take judicial notice of the documents referenced herein and attached hereto, award Defendant its attorneys' fees and costs, and for such further relief this Court deems just and proper.

## LOCAL RULE 7.01(a)(3) CERTIFICATION

Pursuant to L.R. 7.01(a)(3), undersigned counsel certifies that Defendant has conferred with Plaintiff's counsel, Lee Segal, by email and telephone, including by telephone on February 1, 2021 and February 15, 2021, in a good faith effort to resolve the issues raised in this motion and has been unable to do so. The one issue the parties were able to resolve is that Plaintiff's counsel agrees that this Court should take judicial notice of all court filings and public records.

QUARLES & BRADY LLP

By: /s/ *Joseph T. Kohn*
    Joseph T. Kohn
    Florida Bar No. 113869
    Benjamin B. Brown
    Florida Bar No. 13290
    Gabriela N. Timis
    Florida Bar No. 1025730
    1395 Panther Lane, Suite 300
    Naples, FL  34109
    239/659-5026 Telephone
    239/213-5426 Facsimile
    joseph.kohn@quarles.com
    benjamin.brown@quarles.com
    gabriela.timis@quarles.com
    debra.topping@quarles.com
    kerlyne.luc@quarles.com
    DocketFL@quarles.com
    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed on February 24, 2021, using the CM/ECF e-filing system, and was served on Plaintiffs' counsel, Lee Segal, Esq., Segal & Schuh Law Group, P.L., 18167 U.S. Hwy 19 N. Suite 100, Clearwater, FL 33764, lee@segalschuh.com.

/s/ *Joseph T. Kohn*
Joseph T. Kohn

21