UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GOSSAMER WING, LLC, as Trustee,

     Plaintiff,

                                                      Case No. 9:21-cv-80319

v.

THE BANK OF NEW YORK MELLON fka
THE BANK OF NEW YORK, as Trustee for
the Certificateholders of CWABS, Inc.,
Asset-Backed Certificates, Series 2007-2,

     Defendant.
_____/

**PLAINTIFF'S RESPONSE TO MOTION TO QUASH**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, GOSSAMER WING, LLC, as Trustee ("Plaintiff"), by and through its undersigned counsel, hereby responds to the Motion to Quash Service of Process and Vacate Clerk's Default and Final Judgment ("Motion to Quash") of Defendant, THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-2 ("Defendant" or "BONYM"):

**OVERVIEW**

1.     This is Federal Court.  Defendant and its attorneys would instead turn this case into an episode of the Jerry Springer Show.  They do so for two reasons:  (i) to hide Defendant's ongoing, systemic fraud and subornation of perjured testimony, both in this case and several other lawsuits against BONYM; and (ii) to avoid the impact of a default final judgment that resulted from a scheme of deception that Defendant has been utilizing regarding the identity of its own registered agent.

2.     This Court should put an end to Defendant's charade.

1

3.      There is one issue before this Court:  the sufficiency of service.[1]  In its Motion for

Remand, Plaintiff explains not only how service was proper, but how Defendant committed perjury

on the issue upon which Defendant predicated its service challenge, the identity of its Registered

Agent, not just in this case, but several others.  <u>See</u> Motion for Remand.

4.      Defendant knows that CT was/is its Registered Agent.  So do its attorneys.  Indeed,

Defendant does not even challenge the pertinent facts:

- The Bank of New York, Inc. ("BONY") and The Bank of New York Mellon ("BONYM") have the same Employer Identification Number ("EIN"), 13-5160382;

- It is not possible for two different companies to have the same EIN;

- BONY merged into BONYM in 2008, as reflected in the Summons, Complaint, and style of this case, *i.e.* "The Bank of New York Mellon, *f.k.a.* The Bank of New York,"

- As depicted by both the merger and their having the same EIN, BONY and BONYM are not two different companies, but are one and the same;

- BONY's registered agent with the Florida Department of State, <u>www.sunbiz.org</u>, is CT Corporation System ("CT") and has been since 1995; and

---

[1]      The Motion to Quash includes arguments for vacating the clerk's default entered in the State Court other than the sufficiency of service.  However, Plaintiff has already moved to remand this action to State Court, alleging the Notice of Removal was not filed within 30 days of service. If this Court agrees that service of process was sufficient, then Defendant's Notice of Removal is untimely and this case should be remanded to State Court without regard for these other arguments. <u>See</u> Motion for Remand.  Conversely, if this Court rules that service of process was insufficient, then the default will be vacated irrespective of Defendant's other arguments.  Hence, as Plaintiff sees it, there will not be a circumstance where this Court decides whether Defendant's other arguments (not pertaining to service of process) are a basis to vacate the default and the ensuing Final Judgment.  As such, Plaintiff is only responding to Defendant's arguments regarding the sufficiency of service in this Response.

To be clear, Plaintiff firmly believes that Defendant's other arguments for vacating the default lack merit.  Plaintiff further believes that Defendant should be precluded from making those arguments, as a sanction for fraud on the court, for its intentional submission of perjured testimony.  However, Plaintiff does not want to create a situation where it is alleged to have waived its right to remand by litigating any other issues in this Court.

If this Court disagrees with Plaintiff's analysis in this regard or wants Plaintiff to respond to the other arguments in the Motion to Quash now, then Plaintiff will promptly do so upon such an indication from this Court.

- When Plaintiff served process upon CT, BONY's Registered Agent, it was necessarily effectuating service upon BONYM, the same company.

Nonetheless, Defendant has not withdrawn its perjured testimony or taken remedial measures. Instead, Defendant injects a myriad of impertinent, immaterial, and scandalous material into the Motion to Quash, hoping to obtain the desired result by inflaming this Court's passions.[2] [3]

5.     Entry of a default is a common and necessary part of litigation.  See Fla.R.Civ.P. 1.500; Fed.R.Civ.P. 55.  As a foreclosing lender, BONYM has prevailed by default in tens of thousands of lawsuits, so it knows this very well.  BONYM also knows that a default cannot be vacated, or service quashed, merely because a defendant dislikes the consequences of its failure to defend. See Gibbs v. Air Canada, 810 F.2d 1529, 1537 (11th Cir. 1987) (requiring "minimum procedural safeguards" to vacate a default).  The fact that BONYM is the defendant in this case, rather than the plaintiff, does not change this analysis.[4]

---

[2]     Can this Court imagine if a homeowner's attorney tried to defend a foreclosure lawsuit by pointing out the number of foreclosure cases the lender's attorney had filed and the combined value of the homes in which his clients had foreclosed by default?  That sounds absurd, but that is precisely what Defendant is doing here, lamenting the "millions of dollars" in judgments the undersigned's clients have obtained, not in this case, but in other lawsuits.  Unfortunately, this is one of many impertinent, immaterial, and scandalous arguments interposed by Defendant to inflame this Court's passions and distract from the issue at bar.

[3]     Throughout the Motion to Quash, Defendant makes hay about "disbarred lawyer" Mark Stopa, as if his purported association with Plaintiff has an impact on the adjudication of this case. That argument is specious.  Even if Fidel Castro's offspring were the beneficiaries of the trust prosecuting this action, that would have no bearing on the sufficiency of service or any other issues being litigated in this Court.  The extent to which Defendant resorts to these *ad hominem* attacks instead of addressing the issue at bar, *i.e.* the sufficiency of service, speaks volumes about the merit of its position.

[4]     Imagine how BONYM would react if it were prosecuting a lawsuit against a "mom and pop" corporation that: (i) suffered a default after personal service; (ii) moved to vacate that default with perjured testimony about the identity of its registered agent (not just in one case, but many); (iii) got caught in that lie; and (iv) instead of withdrawing its perjurious testimony, railed against the plaintiff and its attorneys in Federal Court while continuing to insist that service should be quashed.  It is a shame how Defendant and its attorneys react so differently when the shoe is on the other foot.

6.     Whatever has transpired in lawsuits against Deutsche Bank National Trust Company ("DBNTC") in cases initiated by other plaintiffs has no bearing on the sufficiency of service against BONYM in this case.  To characterize those lawsuits as "identical" to this case is absurd[5] - a misguided attempt to distract this Court from the issue at hand.  The number of these cases is likewise irrelevant,[6] as is the number of cases that have been adjudicated by default,[7] and the number of cases in which the undersigned is counsel.[8]

7.     The lynchpin of Defendant's service challenge is that BONY and BONYM are different companies, so service on BONY's registered agent, CT, was not service on BONYM.  Tellingly, Defendant does not even support this position via testimony from an employee of its own company.  BONYM's Vice President, Cheryl Santucci ("Santucci"), files an affidavit with

---

[5]     In the DBNTC cases to which Defendant refers, those plaintiffs did not serve DBNTC's registered agent.  The sufficiency of service in those cases hence turns on the propriety of service when the process server followed written instructions from DBNTC's security personnel, at an office at which DBNTC conducted business, to effectuate service on a third-party agent a few blocks away.  The issue here, conversely, is the sufficiency of service on CT, BONYM's Registered Agent (or, as Defendant would have it, whether CT is its Registered Agent).  Suffice it to say that whatever this Court might think of the sufficiency of service in the DBNTC cases has no bearing on the sufficiency of service in this case.

[6]     Lenders have won many thousands of foreclosure cases by default.  Would those homeowners have a viable defense if they defaulted after personal service, then complained about the number of cases in which the banks prevailed by default?  Of course not.

[7]     Defendant implies that Plaintiff is unwilling to litigate on the merits.  That is untrue.  Plaintiff's position is simple.  With a Final Judgment already in place after a properly-entered default, it does not have to litigate on the merits (any more than BONYM should have to litigate the thousands of foreclosure cases on the merits where it has prevailed by default).

[8]     Florida is replete with attorneys who have litigated hundreds if not thousands of lawsuits on behalf of lenders like BONYM in the foreclosure arena.  These lawsuits invariably proceed on the same cause of action, and many of them are adjudicated by default.  Can this Court imagine a homeowner trying to defend such a case by pointing to that lawyer's caseload or the volume of cases in which the lawyer won by default?

If it sounds absurd for Defendant's argument to be presented in this light, then that is the point.  The undersigned's representation of multiple victims of BONYM's fraudulent misconduct has no bearing on the sufficiency of service in this action.  The undersigned's representation of other plaintiffs against DBNTC has even less relevance.  This Court should disregard all such arguments as impertinent, immaterial, and scandalous.

the Motion to Quash, yet says nothing about whether BONY and BONYM are the same or the identity of BONY's Registered Agent.  Those failures, explained in greater detail, <u>infra</u>, are not only fatal to its service challenge, but part of a larger, more organized scheme by BONYM to defraud Florida courts into quashing service that was validly obtained and vacating defaults that were properly entered.  <u>See</u> Request for Judicial Notice of Broward Case ("RJN Broward Case"); Request for Judicial Notice of Aviram Case ("RJN Aviram Case"); Request for Judicial Notice of BONYM Service Challenges ("RJN BONYM Service Challenges").

8.     The Return of Service is regular on its face, requiring Defendant introduce "clear and convincing evidence" that service was improper.  <u>Koster v. Sullivan</u>, 160 So. 3d 385, 388-89 (Fla. 2015).  Defendant does not come close to satisfying that burden.  <u>See</u> <u>South Florida Water Mgmt. Dist. v. RLI Live Oak, LLC</u>, 139 So. 39 869, 872 (Fla. 2014) (defining "clear and convincing evidence" as evidence found to be "credible, facts to which witnesses testify must be distinctly remembered, and testimony must be precise and explicit and witnesses must be lacking in confusion as to facts in issue").  If anything, Plaintiff has presented clear and convincing evidence that service was sufficient.  As such, this Court should deny the Motion to Quash, remand this action to State Court, and impose any other sanctions it deems proper.[9]

### BACKGROUND:  THIS CASE

9.     In its Complaint, Plaintiff details a series of fraudulent and criminal acts by Defendant as part of a claim for treble damages, as authorized by Florida law.[10]  In the process,

---

[9]     In its Motion for Remand, Plaintiff suggests that this Court consider initiating a criminal prosecution for perjury against BONYM and/or Santucci.  Federal Court cannot devolve into a charade of mud-slinging to conceal systemic perjury because a $41.1-trillion-dollar financial institution does not like the consequence of its failure to defend a lawsuit after personal service on its Registered Agent.

[10]    Among the many, inappropriate arguments it makes in an effort to show that Plaintiff's lawsuit lacks merit, Defendant questions the basis for treble damages.  Yet treble damages are

Plaintiff shows how Defendant had no stake in the underlying litigation but acted at the direction and behest of a third-party servicer, which servicer has been committing fraudulent and illegal acts in Defendant's name so it can profit.[11]  See Complaint, ¶¶ 3-40; 43-45.

10.     On October 22, 2020, CT was served with the Summons and Complaint containing these allegations.  The Return of Service is regular on its face, as it contains all elements required by Florida law.  See Koster v. Sullivan, 160 So. 3d 385 (Fla. 2015).  It shows service upon CT, which the process server identifies as the Registered Agent of Defendant.  This is, of course, precisely what Florida law contemplates.  See Fla. Stats. §§ 48.081; 655.0201 (identifying how to serve a corporation and a financial institution, respectively, when it has a registered agent designated with the Florida Department of State).

11.     When Defendant did not respond, a clerk's default was entered against it, conclusively establishing all issues of liability and leaving only the issue of unliquidated damages to be adjudicated.  See Cellular Warehouse, Inc. v. GH Cellular, LLC, 957 So. 2d 62, 665 (Fla. 3d DCA 2007) (a defaulted defendant "admits all well-pleaded allegations in a complaint"); Fla.R.Civ.P. 1.500(e).[12]

12.     On November 13-14, 2020, Plaintiff filed two motions, a supporting affidavit, and a notice of hearing in the State Court, the last of which scheduled a final hearing on the issue of

---

specifically authorized by the statute upon which this lawsuit is predicated.  See Fla. Stat. § 772.104(1).  If Defendant wanted to avoid liability for treble damages, it should have defended this case after being served.

[11]     As this Court adjudicates this motion, it should keep this dynamic in mind.  Even though BONYM, as Trustee of a designated trust, is the named Defendant, a third-party servicer is defending this case in BONYM's name.

[12]     Large portions of the Motion to Quash are Defendant's effort to convince this Court that this lawsuit lacks merit.  Such arguments are unworthy of a response.  Quite simply, the time for Defendant to raise arguments in defense of the allegations in the Complaint was before entry of a default, not months later, when the only issue before the Court is the sufficiency of service.

damages.  On January 6, 2021, after Defendant failed to attend the final hearing or otherwise oppose the relief sought, the State Court entered a Final Judgment After Default ("Final Judgment") in Plaintiff's favor in the amount of $999,240.00.

13.    Each such document, including the Final Judgment, includes a Certificate of Service reflecting it was mailed to Defendant at both its Corporate Headquarters, *i.e.* 240 Greenwich Street, New York City, New York, 10286, as well as CT, its Florida Registered Agent, at 1200 S. Pine Island Road, Plantation, FL 33324.[13]  Nonetheless, Defendant failed to file any papers in the State Court, or otherwise defend this action, until January 21, 2021, when its now-counsel filed the Motion to Quash ("the SC Motion to Quash").[14]

14.    In the SC Motion to Quash, Defendant insists that service was improper because CT was not its Registered Agent.  In support, it filed two affidavits, one from Halow, an employee of CT, and a second from Santucci, its Vice President.

15.    In his affidavit, Halow purports to "reject" service, asserting CT "is not the Registered Agent for an entity by the name of the Bank of New York Mellon."  See SC Motion to Quash, Exhibit "B."  In so alleging, Halow makes no mention of the undersigned's responsive letter, which explains why Plaintiff effectuated service upon CT:

> I am in receipt of your letter … in the above-captioned matter, wherein you indicate that CT Corporation System "is not the registered agent for an entity by the name of The Bank of New York Mellon."
>
> I respectfully suggest you take another look at your records.  The Florida Department of State lists you as the Registered Agent for The Bank of New York, Inc., which maintains offices at 240 Greenwich Street in New York City.  This is the correct Defendant in this case and the entity we are trying to serve.  In fact,

[13]    Notably, Defendant has never denied receipt of any of these filings.  See Camerota v Kaufman, 666 So. 2d 1042, 1045 (Fla. 4th DCA 1996) (certificate of service creates presumption of mailing).

[14]    What Defendant now characterizes as a "scheme" by the undersigned to prevail by default is really its inexcusable failure to respond to a shower of pleadings.

> you'll note that the style of the case depicts not that the Defendant is "the Bank of New York Mellon," as you indicate in your letter, but "The Bank of New York Mellon fka The Bank of New York," as Trustee for a designated trust.
>
> Our process server believes service has been effectuated properly.  I agree. As such, we urge you to forward the Summons and Complaint to The Bank of New York.

See Affidavit of Lee Segal.  This letter was copied to BONYM, yet it offers no explanation for its failure to respond or take appropriate action.

16.    The affidavit that Santucci filed with the SC Motion to Quash, like Halow's, bears the case style of an entirely different lawsuit, having been filed in *Aviram v. The Bank of New York Mellon*, Pinellas County Case No. 20-3614-CI ("Aviram Case").  See SC Motion to Quash, Exhibit "L" ("Santucci's Aviram Affidavit").  That affidavit – signed, notably, on October 23, 2020 – contains the following testimony:

> CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324, is not BONYM's Registered Agent in Florida and was not BONYM's Registered Agent in Florida on August 5, 2020, when the complaint in this action was purportedly served upon BONYM.

See Santucci's Aviram Affidavit, ¶ 7.

17.    On January 29, 2021, Plaintiff filed its Motion to Strike Motion to Vacate and Motion for Sanctions for Fraud on the Court ("Motion for Sanctions"), explaining how Santucci's Aviram Affidavit was perjurious because BONY and BONYM were the same entity, so Plaintiff's service on the registered agent of the former necessarily constituted service on the latter.

18.    On February 10, 2021, Plaintiff filed a Notice in the State Court reflecting that it wanted the Motion for Sanctions to be scheduled for hearing on the next available docket.  The following day, rather than subject itself to that motion and the discovery that would have preceded it, Defendant filed its Notice of Removal.[15]

---

[15]    As explained in detail, infra, the more success the undersigned's clients had in State Court,

## BACKGROUND:  THE BANK OF NEW YORK MELLON

19.     An Employer Identification Number ("EIN") is a unique, nine-digit number assigned by the Internal Revenue Service for business entities operating in the United States.  It is provided for identification purposes.  Certified copies of filings by BONYM with the SEC in 2017 and 2020 reveal the EIN for BONYM is 13-5160382.  See RJN BONYM SEC Filings.

20.     The annual reports for BONY, as set forth on the Florida Department of State website, www.sunbiz.org, show:  (i) BONY's EIN is also 13-5160382; and (ii) CT was BONY's Registered Agent at the time of service in this case and has been its Registered Agent every year since 1995.  See RJN BONY Annual Reports.

21.     An EIN for a corporation is like a social security number for a person.  It is not possible for two different companies to have the same EIN.  The fact that BONY and BONYM have the same EIN means they are the same company.  See Affidavit of Darrin Mish.  As such, when Plaintiff effectuated service of process on BONY's Registered Agent, CT, it necessarily effectuated service on BONYM.  This is precisely what Florida law requires.  See Fla. Stat. § 655.0201 (requiring service on a financial institution be performed on its registered agent).

22.     Evidence that BONY and BONYM are the same company is not limited to them having the same EIN.  As Defendant admits, BONY merged into BONYM in 2008.  See Motion to Quash, pp. 11-12 ("that BONYM maintained BONY's EIN … is hardly surprising given the well-known merger between BONY and BONYM").  This is not a surprise, of course, as it is depicted in the Summons, Complaint, and style of this lawsuit, *i.e.* "The Bank of New York Mellon, *fka* The Bank of New York…", as well as thousands of other lawsuits filed throughout Florida in recent years.

---

the more abruptly BONYM a notice of removal to Federal Court.  See e.g. RJN Aviram Case.

## <u>ANALYSIS:  SERVICE IS SUFFICIENT</u>

23.     CT has been BONY's Registered Agent for the past 26 years.  <u>See</u> RJN BONY

Annual Reports.  As BONY and BONYM have the same EIN, <u>compare</u> RJN BONY Annual

Reports <u>with</u> BONYM SEC Filings, and the former merged into the latter in 2008, they are the

same company.  <u>See</u> Affidavit of Darrin Mish.  As such, when Plaintiff effectuated service on CT,

<u>see</u> Return of Service, it served BONYM's Registered Agent, precisely as Florida law required.

<u>See</u> Fla. Stat. § 655.0201.

24.     Fla. Stat. § 655.0201 is clear. If a financial institution has a registered agent in

Florida, service of process must be effectuated upon the registered agent.  Only when an institution

has no registered agent, or service "cannot be made" upon it, can a plaintiff go to the company's

principal place of business to obtain service.  In the words of the statute:[16]

> (2)    A financial institution authorized by federal or state law to transact business
> in this state may designate with the Department of State a place or registered agent
> located within the state as the financial institution's sole location or agent for
> service of process … **After a financial institution designates a place or**
> **registered agent within this state, such place or registered agent is the sole**
> **location for service of process** …
>
> (3)(a)   If a financial institution has no registered agent or service cannot be made
> in accordance with subsection (2), service may be made to any officer, director, or
> business agent of the financial institution at its principal place of business or at any
> other branch, office, or place of business in the state.

This is, of course, why Plaintiff's counsel sent a letter to CT, with a copy to BONYM, encouraging

it to carry out its role as BONYM's Registered Agent.  <u>See</u> Affidavit of Lee Segal.  This is also

why Plaintiff did not do what Defendant now argues it should have done, <i>i.e.</i> serve BONYM at its

---

[16]     This Court should note the way Defendant quotes this statute in its Motion to Quash.
Rather than citing the statute in full, Defendant omits the portion that requires service on the
registered agent.  Alas, this is one of many misrepresentations from BONYM in this case.

corporate headquarters in New York City. Ironically, if Plaintiff had resorted to service in such a manner, *that* would have been invalid service.

25.     In December, 2020, the Middle District of Florida illustrated this point quite well. Premier Trailer Leasing, Inc. v. DM World Transp., LLC, 2020 WL 7396979, *2 (M.D. Fla. 2020) (following Fla. Stat. § 655.0201, quashing service upon a financial institution where the plaintiff served it at a branch office instead of via its registered agent). Defendant cites no contrary authorities, as none exist. As such, Defendant's assertion that Plaintiff should have gone to its New York City office to obtain service is flat wrong. Id. Quite simply, BONYM had a Registered Agent, CT, so Plaintiff had no choice but to obtain service upon it. Id.

26.     In arguing otherwise, Defendant admits that BONY merged into BONYM in 2008. See Motion to Quash, p. 12 ("that BONYM maintained BONY's EIN—Plaintiff's lynchpin argument—is hardly surprising given the well-known merger between BONY and BONYM"). Yet Defendant suggests this merger somehow invalidates service. It does not.

27.     When BONY merged into BONYM, the surviving corporation, BONYM, became "liable for the debts, contracts, and torts" of BONY. Corporate Express Office Prods. v. Phillips, 847 So. 2d 406, 413 (Fla. 2013) (quoting Barnes v. Liebig, 1 So. 2d 247, 253 (Fla. 1941)). To illustrate, Fla. Stat. § 607.1106 provides:

> All real property and other property, including any interest therein and all title thereto, owned by, and every contract right possessed by, each domestic or foreign eligible entity that is party to the merger, other than the survivor, become the property and contract right of and become vested in the survivor, without transfer, reversion, or impairment."

As a result, when BONY merged into BONYM, the latter assumed all of the former's contracts, including the contractual relationship BONY shared with CT, its Registered Agent. Id.; see also Segall v. Wachovia Bank, N.A., 192 So. 3d 1241, 1244 (Fla. 4th DCA 2016) ("In short, the

surviving corporation succeeds to all of the rights, privileges, immunities, and property of the other entities party to the merger by operation of law, without the necessity of either a bill of sale or an assignment.").

28.     Defendant would have this Court believe BONY no longer exists.  Clearly it does exist, as BONYM.  That helps explain why BONYM has filed an annual report with the Florida Department of State each of the 13 years since the 2008 merger.  See RJN BONY Annual Reports. BONYM might not have made those filings under the name "The Bank of New York Mellon," but that does not somehow convert an active corporation with 26 consecutive years of annual reports, including 13 since the 2008 merger, into a non-existent entity.

29.     Throughout its Motion to Quash, BONYM overlooks how it bears the burden of proof on all issues.  For example, if BONYM believes this merger somehow made service invalid, it must explain how.  Koster, 160 So. 3d at 387-388.  Tellingly, BONYM introduces no evidence on this issue.  Santucci and Halow do not even mention this merger in their affidavits, much less explain how the merger would vitiate service.  In fact, BONYM did not mention the merger (in this case or any other) until Plaintiff, Aviram, and other such plaintiffs began seeking depositions, moving for sanctions, and proving BONYM's systemic fraud about the identity of its Registered Agent in State Courts across Florida.  See Analysis, infra.

30.     With Plaintiff's merger and EIN analyses showing that BONY and BONYM are one and the same, BONYM relies heavily upon the Affidavit of Halow, who contends that CT "rejected" service.  This argument is both factually misleading and legally irrelevant.

31.     Upon receiving CT's letter purporting to reject service, Plaintiff's counsel drafted and caused to be mailed the following response:

> I am in receipt of your letter … in the above-captioned matter, wherein you indicate that CT Corporation System "is not the registered agent for an entity by

the name of The Bank of New York Mellon."

> I respectfully suggest you take another look at your records.  The Florida Department of State lists you as the Registered Agent for The Bank of New York, Inc., which maintains offices at 240 Greenwich Street in New York City.  This is the correct Defendant in this case and the entity we are trying to serve.  In fact, you'll note that the style of the case depicts not that the Defendant is "the Bank of New York Mellon," as you indicate in your letter, but "The Bank of New York Mellon fka The Bank of New York," as Trustee for a designated trust.

> Our process server believes service has been effectuated properly.  I agree.  As such, we urge you to forward the Summons and Complaint to The Bank of New York.

See Affidavit of Lee Segal.  Nonetheless, neither CT nor BONYM replied, yet both continued their perjurious denials that CT was BONYM's Registered Agent.

32.     Competing letters of this nature are hardly the type of "clear and convincing evidence" that justifies quashing service.[17]  Regardless, the Motion to Quash does not turn on these letters.  After all, even if CT sincerely believed it was not Defendant's Registered Agent and even if did not forward the Summons and Complaint to BONYM,[18] that has no impact on the sufficiency

---

[17]     So many questions emanate from this exchange of letters.  Why did CT not reply to counsel's response?  When it kept receiving replies of this nature, why did CT not ask BONY what was going on?  Or did it, and BONYM has just not so apprised this Court?  Did CT know that BONY and BONYM were the same company?  How could it not?  In the 13 years since the merger of BONY into BONYM, this issue has never come up in discussions between the two companies?  Why did CT not forward the Summons and Complaint to BONYM, even if only in an abundance of caution?  Or did it?  At some point, BONYM began communicating with CT (as proven by how CT gave BONYM an affidavit for this case).  See Affidavit of Halow.  When did that first happen?  When did CT first provide BONYM the Summons and Complaint?  When did CT first provide BONYM the letter to counsel?  So many questions, so few answers.  Suffice it to say this is not "clear and convincing evidence" that service was improper.  South Florida Water, 139 So. 39 at 872 (defining "clear and convincing evidence").

[18]     Again, there are legitimate reasons to question CT in these regards. Compare Request for Judicial Notice of BONYM Court Filings ("RJN BONYM Court Filings") (showing how BONYM appeared as counsel in Florida lawsuits after service upon CT without challenging service) with Request for Judicial Notice of BONYM Service Challenges ("RJN BONYM Service Challenges") (showing how, when lawsuits such as this one went poorly for BONYM after service upon CT, BONYM repeatedly denied CT was its Registered Agent).  Regardless, this motion does not turn on CT's conduct.

of service.  In the words of Florida's Third District Court of Appeal, "[s]ervice is not vitiated by the registered agent's failure to give the corporation notice that it had received suit papers on its behalf."  <u>Magnolia Court, LLC v. Moon, LLC</u>, 299 So. 3d 423, 425 (Fla. 3d DCA 2019); <u>Cam-La, Inc. v. Fixel</u>, 632 So. 2d 1067, 1068 (Fla. 3d DCA 1994).

33.     Defendant cites no contrary case law because none exists.  In fact, <u>Magnolia Court</u> and <u>Cam-La</u> are consistent with a long line of cases explaining how the identity of a corporation's registered agent is predicated on who that corporation designates as its registered agent with the Department of State, not whether the registered agent believes it is the registered agent, wants to be, or chooses to be.  <u>See</u> <u>Vrchota Corp. v. Kelly</u>, 42 So. 3d 219, 322 (Fla. 4th DCA 2010) (service on registered agent was valid, even though corporation had revoked agent's authority to accept service, where State had not issued certificate of withdrawal); <u>World Entertainment Partners, LLC v. Trevia, LLC</u>, 925 So. 2d 483, 484 (Fla. 4th DCA 2006) (service upon limited liability company was valid where effectuated upon the company's registered agent even though the registered agent believed he had resigned from that position); <u>MAC Organization, Inc. v. Harry Rich Corp.</u>, 374 So. 2d 81, 82-83 (Fla. 3d DCA 1979) (service needed to be effectuated on the registered agent designated with the state, not a previous registered agent, even though the previous agent did not complete the resignation form correctly).

34.     These decisions are also consistent with the reason why registered agents exist in the first place, <i>i.e.</i> to provide the public with a straightforward way of effectuating service of process on a corporation.  To accomplish this, the public cannot be put in the position of deciphering whether that agent is actually authorized to accept service.  That is why courts do not resolve service disputes based upon the intent of the agent or the intent of the corporate defendant, but on who the public was informed should be served.  <u>Nat'l Equipment Rental, Ltd. v. Szukhent</u>,

14

375 U.S. 311, 314-318 (1964); <u>Magnolia Court</u>, 299 So. 3d at 425; <u>Vrchota Corp.</u>, 42 So. 3d at

322; <u>Cam-La</u>, 632 So. 2d at 1068; <u>World Entertainment</u>, 925 So. 2d at 484; <u>MAC Organization</u>,

374 So. 2d at 82-83.

35.     As this Court contemplates the rationale for these cases, it should arrive at the same

conclusion these courts did.  Quite simply, a registered agent's failure to forward a summons and

complaint to a corporate defendant cannot vitiate service.  Were the law otherwise, then a corporate

defendant could avoid litigation by changing its name and (intentionally) failing to inform its

registered agent.  Every lawsuit against that corporate defendant would have a built-in service

defense, to be raised whenever it saw fit.  Obviously, that cannot be the law.[19]  <u>See</u> cases, <u>supra</u>.

36.     BONYM is a $41.1-trillion-dollar financial institution.  It has offices worldwide.  It

has litigated tens of thousands of cases in Florida.  There is no excuse for BONYM to have failed

to inform CT that it was its Registered Agent in the 13 years since BONY merged into BONYM.

Neglect that extreme would not even be deemed excusable, <u>see</u> <u>Gibbs</u> 810 F.2d at 1537, much less

render service invalid.[20]  <u>See</u> cases, <u>supra</u>.

---

[19]     The concept of a corporate defendant not telling its registered agent that its company name
has changed might sound absurd.  Yet that may be precisely what happened here.  After all, there
is no doubt that BONY retained CT as its Registered Agent in 1995 and has been using it ever
since.  <u>See</u> BONY Annual Reports.  Yet when BONY's name changed after its merger with
BONYM in 2008, BONYM did not inform CT.  That is what Halow says, at least.  <u>See</u> Affidavit
of Halow.  While it is also possible that BONYM did tell CT that it was its Registered Agent and
that Halow is lying, those facts would obviously not vitiate service, either.

[20]     It is hard to imagine that a financial institution that participates in lawsuits as frequently as
BONYM inadvertently failed to inform CT that it was its Registered Agent at any point in the past
13 years.  This failure had to be intentional.  If it were otherwise, how does one explain BONYM
filing an Annual Report with the Florida Department of State every year every year since the 2008
merger?  Or Santucci's many affidavits denying CT was its Registered Agent?  Is anyone supposed
to believe the Vice President of a $41.1 trillion-dollar institution did not know the identity of its
own Registered Agent for the past 13 years?  Regardless, even if the failure to inform CT was
inadvertent, this does not vitiate service.  <u>Magnolia Court</u>, 299 So. 3d at 425.

37.     In the face of the foregoing, Defendant cites Fla. Stat. § 607.0501(3), arguing that CT did not "accept the appointment" as Registered Agent for BONYM.  This assertion is specious.  Again, it does not matter whether CT believed it was the Registered Agent, wanted to be, or chose to be.  Nat'l Equipment Rental, 375 U.S. at 314-318; Magnolia Court, 299 So. 3d at 425; Vrchota Corp., 42 So. 3d at 322; World Entertainment, 925 So. 2d at 484; Cam-La, 632 So. 2d at 1068; MAC Organization, 374 So. 2d at 82-83.   Moreover, CT did "accept the appointment" as BONYM's Registered Agent, as it has held that position for 26 consecutive years.  See RJN BONY Annual Reports.  CT might not have realized that BONY and BONYM were the same company (such that its role as Registered Agent for BONY also made it Registered Agent for BONYM), but that does not mean it did not "accept the appointment," nor does it vitiate service in any way.

## ANALYSIS:  A PATTERN OF PERJURY

38.     Plaintiff firmly submits that this Court can and should deny the Motion to Quash without resort to evidence/filings in other BONYM lawsuits.  That said, a review of other cases shows that the problems inherent in this case are not isolated, but are part of a larger, more troubling pattern of systemic perjury by one of the world's largest financial institutions.

39.     In lawsuits where BONYM is named as a defendant and does not mind responding after service upon CT, e.g. an interpleader, its routine practice is to appear via counsel without challenging service.  See RJN BONYM Court Filings.  By contrast, where BONYM does not like how a lawsuit is unfolding after service upon CT, its practice is to challenge the sufficiency of service by perjuriously denying that CT is its Registered Agent.  See RJN BONYM Service Challenges; RJN Broward Case.[21]

---

[21]     BONYM may say that it chose not to raise service as a defense in certain cases.  Such a position cannot be reconciled with the express admissions in many of these filings that service on BONYM was properly procured (after service via CT).  See RJN BONYM Service Challenges.

40.     Attached to the Request for Judicial Notice of BONYM Service Challenges are motions filed by BONYM in _ten_ other, pending cases in Florida courts.  In all ten cases, BONYM was served with process via CT but failed to timely respond, resulting in a default.  In all ten cases, BONYM moved to vacate the default by challenging the sufficiency of service.  In all ten cases, BONYM supported that motion with an affidavit from Santucci, CT, or both, insisting that service was improper because CT was/is not its Registered Agent.  See RJN BONYM Service Challenges; RJN Broward Case.

41.     The testimony in all ten of these cases is perjurious.  After all, CT has been the Registered Agent for BONY since 1995.  See RJN BONY Annual Reports.  As BONY and BONYM have the same EIN, they are the same company.  See Affidavit of Darrin Mish.  Hence, whether the defendant in these cases was identified as BONY, BONYM, or BONYM _f.k.a._ BONY, service on CT necessarily meant the defendant had been served.

42.     Part of what makes BONYM's submission of perjurious testimony in these cases so troubling is how, at first blush, it appears so compelling.  After all, where CT is denying it is the Registered Agent, BONYM is corroborating that position, and big-firm lawyers are threatening sanctions for arguing otherwise, it certainly looks like service on CT was improper.[22]  Indeed, what would have happened if Plaintiff had not discovered that BONY and BONYM had the same EIN? It certainly appears that BONYM would have parlayed its perjurious testimony into an order vacating the default, not just in the instant case, but in all ten of these lawsuits.[23]

---

[22]     Again, no matter how compelling this argument might have appeared, it was still wrong. As Florida's Third District Court of Appeal has twice explained, "[s]ervice is not vitiated by the registered agent's failure to give the corporation notice that it had received suit papers on its behalf."  Magnolia Court, 299 So. 3d at 425; Cam-La, 632 So. 2d at 1068; see also cases, supra.

[23]     The way Defendant was talking about Plaintiff's counsel in the SC Motion to Quash ("egregious and intentional fraud"), the undersigned shudders to think what might have become of him and his colleagues had these accusations been true.  With that thought in mind, might it be

43.     To illustrate, the plaintiffs in the Broward Case procured a final judgment by default against BONYM after service upon CT, its Registered Agent.  More than a year later, BONYM moved to vacate the default, asserting that service was insufficient.[24]  In support, BONYM filed an affidavit from its Vice President, Santucci, denying that CT was the Registered Agent for BONYM.  Without evidence to the contrary, *e.g.* proof of the EIN issue described above, that court vacated the final judgment, and those plaintiffs thereafter dismissed their lawsuit.  See RJN Broward Case.[25]

44.     As this example depicts, BONYM is more than happy to parlay its denial that CT is its Registered Agent into a successful outcome, quashing service even though service was proper and vacating defaults and judgments that it otherwise had no basis to vacate.  It did so in the Broward Case.[26]  It is trying to do so in ten other, pending cases.  See RJN BONYM Service Challenges.  And it is now trying to do so here.  See Motion to Quash.

---

appropriate for some type of sanction to be imposed against Defendant's attorneys, who have refused to withdraw knowingly perjurious testimony, declined to take any remedial measures, and continue to insist service is proper?  From the undersigned's perspective, the "justice system" cannot impart justice where one side fears repercussions for misconduct while the other side perceives it can knowingly present perjured testimony in numerous lawsuits with impunity.

[24]     By waiting more than a year to challenge the final judgment in the Broward Case, BONYM's only argument was that the judgment was void.  See Fla.R.Civ.P. 1.540.  As such, its only argument was to challenge service.

[25]     Initially, the plaintiffs in the Broward Case were *pro se*.  Even after they retained counsel, however, that attorney was unaware that BONY and BONYM were the same company or that Santucci's affidavit denying CT was BONYM's Registered Agent was a fraud.  See RJN Broward Case.  The way BONYM was able to conceal the nature of its perjury from a judge and opposing counsel in the Broward Case underscores the nature of the problem.

[26]     In the Broward Case, BONYM went from not having any interest in the subject property (the result of the final judgment after default in that case) to being able to enforce its mortgage – all as a result of knowingly perjured testimony about the identity of its own Registered Agent.

45.     As this Court contemplates these facts, along with the evidence presented from both sides (or lack thereof) on the sufficiency of service in this case, it should take a closer look at the Aviram Case.  See RJN Aviram Case.

46.     There, Santucci filed an affidavit in October, 2020 denying that CT was BONYM's Registered Agent, much like she did in the Broward Case.  Her denial was straightforward and unequivocal, see Santucci's Aviram Affidavit, ¶ 7, but Aviram knew she was lying.  As such, he sought to take Santucci's deposition, as well as that of a corporate representative of BONYM.  When BONYM refused, Aviram filed a motion to compel depositions in the State Court.  See RJN Aviram Case.

47.     Hoping to vacate the adverse final judgment in the Aviram Case without submitting to depositions or subjecting itself to cross-examination during an evidentiary hearing, BONYM scheduled its motion to quash service for a 30-minute, non-evidentiary hearing.  Troubled at how BONYM was trying to prevail with perjured testimony, Aviram moved for sanctions for fraud on the court and laid out the facts, including the EIN issue set forth herein.  See RJN Aviram Case.

48.     On February 2, 2021, at a hearing on the motion to compel depositions, the State Court directed the hearing on BONYM's motion to quash be rescheduled for an evidentiary hearing, to occur after Aviram took Santucci's deposition.  In so ruling, His Honor shared his concerns about the veracity of BONYM's testimony.  Before the State Court could memorialize that ruling, BONYM removed the Aviram Case to federal court.[27]   See RJN Aviram Case (including a hearing transcript).

---

[27]     BONYM's motion to quash in the Aviram Case had been filed in State Court since October. Its Notice of Removal, on the heels of an adverse ruling from the State Court, was a transparent effort to avoid submitting to discovery and avoid an evidentiary hearing on the service issue.

49.     Plaintiff's point, of course, is not for this Court to litigate the Aviram Case.  That said, an analysis of that case helps explain the evidentiary defects from Defendant in this case.

50.     In October of 2020, when Santucci signed the Santucci Aviram Affidavit – the same affidavit BONYM attached to the SC Motion to Quash in this case – BONYM believed it could use Santucci's perjured testimony to vacate the final judgment in the Aviram Case.  <u>See</u> Santucci's Aviram Affidavit.  After all, that is precisely what BONYM did in the Broward Case.  <u>See</u> RJN Broward Case.

51.     Unfortunately for BONYM, Aviram knew better.[28]  Once he moved to compel Santucci's deposition, explained the EIN issue to the State Court, and moved for sanctions for BONYM's knowing submission of perjured testimony, the gig was up.  BONYM knew it had been caught lying under oath – not just in this case, but in every case where this issue is being litigated.[29] <u>See</u> RJN BONYM Service Challenges.  That is why, instead of facing the music in the Aviram Case in State Court, BONYM removed it to Federal Court. <u>See</u> RJN Aviram Case.  Likewise, that is why BONYM removed this action to Federal Court – 112 days after being served but just one

---

[28]     Defendant would have this Court believe it required an extensive investigation to ascertain that BONY and BONYM were the same company.  The truth is quite the contrary.
        Plaintiff's counsel has long believed BONY and BONYM were one and the same, as that is depicted in many thousands of cases throughout Florida ("The Bank of New York Mellon, f.k.a. The Bank of New York …").  Moreover, a review of BONY's annual reports with the Florida Department of State shows BONY's office location to be 240 Greenwich Street in New York City, the same location as BONYM.  What cinched it, though, was a simple internet search of BONY's EIN, 13-5160382.  Upon conducting that search, Plaintiff's counsel quickly found BONYM's filings with the Securities and Exchange Commission bearing that same EIN.  That information in hand, it was not difficult to prove that BONY and BONYM were one and the same.
[29]     The State Court in <u>Cook v. The Bank of New York</u>, Palm Beach County Case No. 20-CA-10964, has also scheduled an evidentiary hearing on a motion for sanctions for fraud on the court pertaining to this same issue, <i>i.e.</i> BONYM lying under oath about the identity of its Registered Agent.
        On information and belief, avoiding such hearings, and the discovery that precedes them, is why BONYM has removed most of the lawsuits against it to Federal Court.

day after Plaintiff filed a notice asking the State Court to set its Motion for Sanctions on the next available hearing date.  <u>See</u> State Court docket.

52.     As horrific as this all is, this motion is not about perjury or sanctions.  It is about the sufficiency of service.  As such, Plaintiff's purpose is not to show BONYM committed perjury or deserves sanctions imposed against it, but to explain why it has failed to introduce the "clear and convincing evidence" necessary to quash service.  In short, ever since BONYM's perjurious misconduct was exposed, BONYM changed its course of conduct and, while not conceding that service was sufficient, Santucci stopped signing affidavits addressing the dispositive facts.

53.     Back on October 23, 2020, Santucci was willing to sign the Santucci Aviram Affidavit, denying that CT was BONYM's Registered Agent, <u>see</u> Santucci Aviram Affidavit, ¶ 7, just as she had done in the Broward Case.  <u>See</u> RJN Broward Case.  In the ensuing months, however, as Plaintiff, Aviram, and other plaintiffs laid out the true facts, moved to compel depositions, and sought sanctions, Santucci was unwilling to sign any more affidavits containing this assertion.

54.     *This is why* Santucci's affidavit in this case, filed in this Court in February, 2021, offers no testimony on the dispositive issues.  *This is why* Santucci is unwilling to swear under oath in this Court "CT was not BONYM's Registered Agent," either at the time of service or otherwise.  *This is why* Santucci is unwilling to testify "BONY and BONYM are not the same entity."  And *this is why* nobody else from BONYM will so attest, either.  Quite simply, BONYM knows CT was/is its Registered Agent, it knows Santucci has been caught submitting perjured testimony, and it does not want to face any further sanction, *e.g.* criminal prosecution.

55.     While Defendant may have stopped suborning perjury, make no mistake, Your Honor.  It is not being forthcoming with the truth.  Even now, as the truth is glaringly obvious,

21

Defendant continues to challenge the sufficiency of service, both in this Court and many others. Just as troubling, instead of addressing the sufficiency of service head-on, Defendant has turned this proceeding into a charade of mud-slinging and *ad hominem* personal attacks.

56.     Service of process was sufficient.  Defendant has no evidence otherwise, much less the "clear and convincing evidence" necessary to quash service.  This Court should deny the Motion to Quash, award Plaintiff its attorney's fees in prosecuting this motion, and grant any other relief that this Court deems proper.

## CONCLUSION

57.     The Return of Service was regular on its face, so quashing service required Defendant prove service was insufficient with "clear and convincing evidence." Koster, 165 So. 3d at 387-388.  To satisfy that burden, Defendant needed to present evidence that is "precise and explicit," and "of such weight that it produces… a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." South Florida Water, 139 So. 3d 869 at 872.  Here, Defendant's evidence on the sufficiency of service is not "exact," it is not "precise," and it certainly does not produce a firm belief, without hesitancy, that CT was not its Registered Agent.  If anything, the evidence leaves no doubt that CT was/is BONYM's Registered Agent.

58.     Service was properly obtained on October 22, 2020.  As such, this Court should deny the Motion to Quash, at least to the extent it challenges the sufficiency of service, and remand this case to State Court.[30]

---

[30]     As service is invalid, the Notice of Removal was untimely, so this Court should grant Plaintiff's Motion for Remand, leaving the State Court to adjudicate Defendant's other arguments for vacating the default.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM-ECF to Joseph Kohn, Esquire on this 27th day of February, 2021.

_/s/ Lee Segal, Esquire_
Lee Segal, Esquire (FBN 37837)
**Segal & Schuh Law Group, P.L.**
18167 U.S. Highway 19 North, Suite 100
Clearwater, Florida 33764
Tel: (727) 824-5775 Fax: (877) 636-7408
lee@Segalschuh.com (Attorney)
marie@segalschuh.com (Florida Registered Paralegal)